## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
## ROANOKE DIVISION

| | | |
|---|---|---|
| **KELVIN E. BROWN,** | ) | |
| Plaintiff | ) | Civil Action No.: 7:09cv00180 |
| | ) | |
| v. | ) | |
| | ) | **OPINION** |
| **TRACY S. RAY, et al.,** | ) | |
| Defendants | ) | By: Pamela Meade Sargent |
| | ) | United States Magistrate Judge |

Plaintiff, Kelvin E. Brown, an inmate held at Red Onion State Prison near Pound, Virginia, ("Red Onion"), filed this action pro se for monetary damages and injunctive relief under 42 U.S.C. § 1983 and the Religious Land Use and Institutionalized Persons Act, ("RLUIPA"), 42 U.S.C. §§ 2000cc *et seq.*, against various Virginia Department of Corrections, ("VDOC"), officers and officials. Jurisdiction over this matter is based upon 28 U.S.C. §§ 1331 and 1343. This case is before the undersigned magistrate judge by transfer based on the consent of the parties pursuant to 28 U.S.C. § 636(b)(1)(A).

The defendants have filed two separate motions for summary judgment,[1] to both of which the plaintiff has responded. Based on the arguments contained in the parties'

---

[1]The defendants filed one motion for summary judgment, addressing only Brown's claim that the defendants violated his constitutional right to freely exercise his religion under the First Amendment and RLUIPA by disapproving various issues of a Nation of Islam newspaper. ("First Motion") (Docket Item No. 25.) The defendants filed a separate motion for summary judgment, addressing the remainder of Brown's claims, arguing that Brown has failed to exhaust his administrative remedies with respect to those claims. ("Second Motion") (Docket Item No. 17.)

briefs and the accompanying affidavits and exhibits, I find that the defendants' First Motion and Second Motion should be granted in part and denied in part. The defendants also have filed a Motion To File Document Under Seal, (Docket Item No. 24) ("Motion to Seal"), which will be granted as to this proceeding only.

Brown filed his Complaint pursuant to 42 U.S.C. § 1983, alleging a violation of his constitutional rights under the First Amendment and RLUIPA.[2] Brown's Complaint contains the following six claims: (1) his weekly Nation of Islam[3] newspaper, "The Final Call," is being denied by VDOC officials based on racial and religious discrimination; (2) he is being denied access to Nation of Islam religious services; (3) he is being denied the necessary documentation to appeal the Publication Review Committee's decisions regarding his disapproved publications; (4) he is being discriminated against based on his race and religion; (5) the Publication Review Committee does not afford due process; and (6) Major L. Fleming is denying him access to his publications based on Brown's race and religious views. Brown is seeking the court's permission to receive his "religious and cultural publications," and he is seeking monetary damages in the amount of $1,000.00.

In their First Motion, the defendants argue that Brown's first claim, i.e. that The Final Call is being denied based on racial and religious discrimination, should be dismissed for the following reasons. First, the defendants argue that Brown cannot

---

[2]Brown also alleges violations under the Religious Freedom Restoration Act of 1993, ("RFRA"). However, the court notes that RFRA is merely the predecessor to RLUIPA.

[3]The Nation of Islam movement is "based on the [Qur'an] as interpreted by Elijah Muhammad and ministers within the Nation." *Cooper v. Tard*, 855 F.2d 125, 126 (3d Cir. 1988).

make a valid claim under the First Amendment because the issues of the disapproved newspaper constitute "[m]aterial that promotes or advocates violence, disorder, insurrection or terrorist activities against individuals, groups, organizations, the government, or any of its institutions," in violation of VDOC Operating Procedure, ("OP"), 803.2(V)(L)(7), and because they constitute "[m]aterial whose content could be detrimental to the security, good order, discipline of the facility, or offender rehabilitative efforts or the safety or health of offenders, staff, or others," in violation of OP 803.2(V)(L)(12). The defendants argue that these policies are related to prison security, which is a recognized compelling state interest, and which is left to the discretion of prison administrators. They argue that the fact that The Final Call also is a religious publication is incidental to the security threat that it poses under the applicable Operating Procedures.

The defendants also argue that Brown fails to make out a claim under RLUIPA with regard to his first claim. Specifically, they argue that he cannot show, as he must under RLUIPA, that the government's action has created a substantial burden on his religious exercise. Moreover, they contend that, even if he could show the requisite substantial burden, the government has shown the necessary compelling interest that is furthered by the least restrictive means. In addition, the defendants argue that they are entitled to immunity from claims for monetary damages under § 1983 in their respective official capacities, and they argue that they are entitled to immunity from RLUIPA claims in both their official and individual capacities for monetary damages. Finally, the defendants contend that they are entitled to good faith qualified immunity to the extent that Brown is seeking monetary damages because he has alleged no conduct that violated clearly established statutory or constitutional rights of which a

reasonable person would have known.

In their Second Motion, the defendants argue that summary judgment should be granted in their favor on Brown's remaining five claims due to his failure to exhaust all available administrative remedies with respect thereto.

## I.  Facts[4] and Analysis

### A.  First Motion for Summary Judgment

Brown, a member since 1993 of the religious community known as the Nation of Islam, ("NOI"), is an inmate who has been incarcerated at Red Onion since June 2008.[5]  Brown began receiving the weekly NOI newspaper known as "The Final Call" beginning in August 2008 at Red Onion.  He had received this same newspaper at other penological institutions, including Augusta Correctional Center, for more than 14 years, with no issues having ever been disapproved.  Sometime around November 2008, Brown stopped receiving The Final Call at Red Onion, despite having paid for a subscription to the newspaper. When Brown inquired into the reason for this discontinuation, he was initially informed by defendant T. Pease, the Mailroom Supervisor at Red Onion, that the newspaper had not yet been received by the mailroom and that it would be forwarded to him upon receipt. However, on or about December 2, 2008, Brown was informed by defendant Major L. Fleming, the Chief

---

[4]For purposes of deciding the motions for summary judgment, the facts will be viewed in the light most favorable to Brown.

[5]Brown was previously housed at Augusta Correctional Center.

of Security at Red Onion, that he had reviewed and disapproved The Final Call Vol. 28 #5,[6] as it violated OP 803.2(V)(L)(12), and he had forwarded it on to the Publication Review Committee, ("PRC"), for a final decision as to whether Brown should receive it. Thereafter, on January 9, 2009, the PRC advised Brown that it had disapproved Vol. 28 #5 due to a violation of OP 803.2(V)(L)(12). Specifically, the PRC found that Vol. 28 #5 constituted "[m]aterial whose content could be detrimental to the security, good order, discipline of the facility, or offender rehabilitative efforts or the safety or health of offenders, staff, or others." Brown was advised that he could appeal this decision within five days through the Inmate Grievance Procedure. The following day, Brown submitted a Regular Grievance form complaining of the disapproval of this publication. On February 10, 2009, the Warden at Red Onion, defendant Tracy S. Ray, responded to Brown's grievance, finding it unfounded. Brown was advised that he could appeal this decision within five days to the Deputy Director of Operations, John Jabe, which he did. However, on February 24, 2009, Jabe upheld the Warden's decision, finding Brown's grievance unfounded, as the PRC's decision was made in accordance with OP 803.2.

Between January 9, 2009, and May 18, 2009, Brown received notice from the PRC that it had reviewed the following issues of the Final Call and had determined that he could not possess them: Vol. 28 #4, #6, #7, #8, #9, #10, #11, #12, #13, #14, #15, #16, #17, #18, #19, #20, #25, #26, #27, #28 and #29. The record reveals that the PRC disapproved Brown's possession of all of these issues based on a determination that they violated either OP 803.2(V)(L)(7), OP 803.2(V)(L)(12) or both. Brown

---

[6]The Final Call will hereafter be referenced in this Opinion only by the volume and number of the particular issue being discussed.

properly utilized the Inmate Grievance Procedure at Red Onion to appeal the PRC's unfavorable determinations regarding Vol. 28 #4, #5, #10, #11, #12, #13, #14, #15, #16, #17, #18, #20 and #25. However, these decisions all were upheld by both the Warden and the Deputy Director.  On May 15, 2009, Brown filed his Complaint with this court.  Brown eventually exhausted all of his administrative remedies with regard to each of these disapproved issues of The Final Call by July 18, 2009.

With regard to a motion for summary judgment, the standard for review is well-settled. The court should grant summary judgment only when the pleadings, responses to discovery and the record reveal that "there is no genuine issue as to any material fact and ... the movant is entitled to a judgment as a matter of law."  FED. R. CIV. P. 56(c);  *see, e.g., Celotex Corp. v. Catrett,* 477 U.S. 317, 322-23 (1986); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250 (1986); *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 586-87 (1986).  A genuine issue of fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson*, 477 U.S. at 248.

In considering a motion for summary judgment, the court must view the facts and the reasonable inferences to be drawn from the facts in the light most favorable to the party opposing the motion.  *See Anderson*, 477 U.S. at 255; *Matsushita*, 475 U.S. at 587.  Thus, the court will view the facts and inferences in the light most favorable to Brown on the defendants' motions for summary judgment.  In order to be successful on a motion for summary judgment, a moving party "must show that there is an absence of evidence to support the non-moving party's case" or that "the evidence is so one-sided that one party must prevail as a matter of law." *Lexington-*

*South Elkhorn Water Dist. v. City of Wilmore*, *Ky.,* 93 F.3d 230, 233 (6th Cir. 1996).

### 1.  Exhaustion of Administrative Remedies

The Prison Litigation Reform Act, ("PLRA"), Pub. L. No. 104-134, amended 42 U.S.C. § 1997e making it mandatory that a prison inmate exhaust his administrative remedies before filing a civil rights suit based on prison conditions. This section states:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C.A. § 1997e(a) (West 2003).  This court previously has held that the exhaustion requirement of the PLRA applies to inmates seeking monetary damages, although such damages are not available through a prison grievance system.  *See Osbourne v. Deeds*, Civil Action No. 7:99cv00774 (Jan. 24, 2001).  The United States Supreme Court also has addressed this issue, holding that under the PLRA, a particular remedy need not be available through the prison's administrative process in order for the PLRA exhaustion requirement to apply.  *See Booth v. Churner*, 532 U.S. 731 (2001).  The Fourth Circuit has held that an inmate's failure to exhaust administrative remedies is an affirmative defense that must be raised and pled by the defendants.  *See Anderson v. XYZ Corr. Health Servs., Inc.*, 407 F.3d 674, 681 (4th Cir. 2005).

I note that Brown had not actually exhausted his administrative remedies with

regard to the following issues of The Final Call at the time he filed his Complaint in this court: Vol. 28 #11, #16, #17, #20 and #25.  However, Brown had exhausted his administrative remedies with regard to the denial of the other eight issues withheld prior to filing suit.  Also, Brown exhausted all of his administrative remedies with regard to all of the issues by July 18, 2009, more than a month before the defendants filed their Answer.  Additionally, the court notes that the defendants do not contest that Brown has exhausted his administrative remedies with regard to his first claim.  Therefore, to the extent that the defendants could have raised this issue before the court, it has now been waived.  *See Anderson*, 407 F.3d at 681.  That being said, I find that Brown has properly exhausted all of his administrative remedies with respect to his first claim.

### 2. Immunity

#### a. Absolute Immunity

I next will address the defendants' immunity arguments before turning to the substantive First Amendment and RLUIPA claims.  I first note that the Fourth Circuit has clearly held that RLUIPA does not authorize a claim for money damages against an official in his or her official capacity. *See Madison v. Virginia*, 474 F.3d 118 (4th Cir. 2006).  Thus, to the extent that Brown seeks such remedy,[7] the claims against the defendants in their official capacities must be dismissed.  Moreover, The Fourth Circuit recently held in the case of *Rendelman v. Rouse*, 569 F.3d 182 (4th Cir. 2009),

---

[7]Brown does not specify in his Complaint whether he is suing the defendants in their individual or official capacities or both.

that if jurisdiction under RLUIPA is based on the spending clause, RLUIPA does not authorize a claim for money damages against officials sued in their individual capacities.  The court in *Rendelman* recognized that Congress had the right to enact RLUIPA under the spending clause to control the actions of state and local entities and officials who receive federal funding.  *See* 569 F.3d at 187-89.  The court further noted that RLUIPA itself recognizes that Congress also has the authority to act when actions at issue affect interstate commerce.  *See Rendelman*, 569 F.3d at 189 (citing 42 U.S.C. § 2000cc-1(b)).  The *Rendelman* court emphasized that when Congress desires to impose a condition under the spending clause, "it is Congress' burden to 'affirmatively impos[e]' [the] 'condition in clear and unmistakable statutory terms.'" 569 F.3d at 189 (quoting *Va. Dep't of Educ. v. Riley*, 106 F.3d 559, 563 (4th Cir. 1997) (en banc) as quoted in *Madison*, 474 F.3d at 125)).  The Fourth Circuit in *Rendelman* held that "in simply defining 'government' in § 2000cc-2 to include a 'person acting under color of State law,' Congress did not signal with sufficient clarity an intent to subject such a person to an individual capacity damages claim under RLUIPA." 569 F.3d at 189 (citing *Pennhurst State Sch. & Hosp. v. Halderman*, 451 U.S. 1, 17 (1981)).  Thus, Brown cannot rely on RLUIPA's spending clause basis to pursue a claim for individual capacity damages.  Since Brown's Complaint does not make any allegation that the defendants' actions affected interstate commerce, it must be assumed that RLUIPA applies to the defendants based on the VDOC's receipt of federal funds.  That being the case, again, to the extent that Brown seeks monetary damages against the defendants in their individual capacities under RLUIPA, the First Motion should be granted, and judgment should be entered in the defendants' favor as to those claims.

Next, the defendants argue that they are immune from suit under § 1983 in their official capacities for monetary damages, as such suits are not cognizable under § 1983.  I agree.  *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 70-71 (1989). (holding that state officials sued in their official capacities are not "persons" within the meaning of § 1983.)  Thus, to the extent that Brown seeks to sue the defendants in their official capacities for monetary damages pursuant to § 1983, such claims must be dismissed.  Both the Supreme Court and the Fourth Circuit have held that state officials sued in their individual capacities are "persons" within the meaning of § 1983 and are not absolutely immune from personal liability under § 1983 solely by virtue of the official nature of their acts.  *See Hafer v. Melo*, 502 U.S. 21, 30-31 (1991); *White v. Gregory*, 1 F.3d 267, 269-70 (4th Cir. 1993).  Nonetheless, government officials may enjoy qualified immunity from civil liability for performing discretionary functions only insofar as their conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  Thus, the court must determine whether the defendants are entitled to good faith qualified immunity on Brown's First Amendment and RLUIPA claims for damages in their individual capacities.

### b.  *Good Faith Qualified Immunity*

Brown alleges that the defendants violated his right to the free exercise of his religion under the First Amendment and under RLUIPA.  As stated above, it is well-settled that state officials performing discretionary functions are shielded from liability in their individual capacities for monetary damages if they can demonstrate

-10-

that their "conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow*, 457 U.S. at 818. A claim of qualified immunity is evaluated using a three-step analysis. First, the court must determine "whether plaintiff's allegations, if true, establish a constitutional violation." *Hope v. Pelzer*, 536 U.S. 730, 736 (2002); *see also Saucier v. Katz*, 533 U.S. 194, 201 (2001).[8]   Second, the court must "inquire whether at the time of the alleged violation [the right] was clearly established." *Collinson v. Gott*, 895 F.2d 994, 998 (4th Cir. 1990) (Phillips J., concurring).   Third, the court must determine whether a "reasonable person in the official's position would have known that his conduct would violate that right." *Collinson*, 895 F.2d at 998 (Phillips J., concurring).

First, I will determine whether Brown has alleged a constitutional or statutory right that has been violated.  Brown claims that his constitutional right to the free exercise of his religion under the First Amendment has been violated and that his statutory right to the free exercise of religion under RLUIPA has been violated. Courts have held that although inmates lose some constitutional protections upon incarceration, they retain the right to freely worship while in prison.  *See McManus v. Bass*, 2006 WL 753017 at *4 (E.D. Va. Mar. 22, 2006) (citing *O'Lone v. Shabazz*, 482 U.S. 342, 348 (1987); *Bell v. Wolfish*, 441 U.S. 520, 545 (1979)).

---

[8]The recent Supreme Court opinion in *Pearson v. Callahan*, ___ U.S. ___, 129 S. Ct. 808, 818 (2009), held that the sequential inquiry of *Saucier* is often appropriate, but not mandatory.  Instead, the Court held that the judges of the district courts and courts of appeals should be permitted to exercise their sound discretion in deciding which of the prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand.  *See Pearson*, 129 S. Ct. at 818.

The Free Exercise Clause of the First Amendment provides that "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof. ..."  U.S. CONST. AMEND. I.  In order to establish a right under the Free Exercise Clause, Brown must make two threshold showings.  First, Brown must show that he sincerely holds his religious beliefs.  *See Wisconsin v. Yoder*, 406 U.S. 205, 215-16 (1972).  Second, Brown must show that his claims are rooted in religious belief and are not "purely secular."  *Yoder*, 406 U.S. at 215-16.  Evaluating a statutory violation under RLUIPA involves the same threshold issues as invoked by the Free Exercise Clause for the most part.  RLUIPA provides that "No government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution . . . unless the government demonstrates that imposition of the burden . . . (1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest."  42 U.S.C.A. § 2000cc-1(a) (West 2003).  The term "government" as used in § 2000cc-1 is defined broadly to include: "(i) a State, county, municipality, or other governmental entity created under the authority of a State; (ii) any branch, department, agency, instrumentality, or official of an entity listed in clause (i); and (iii) any other person acting under color of State law[.]" 42 U.S.C.A. § 2000cc-5(4)(A) (West 2003).  RLUIPA defines religious exercise as "any exercise of religion, whether or not compelled by, or central to, a system of religious belief."  42 U.S.C.A. § 2000cc-5(7)(A) (West 2003).  "If a plaintiff produces prima facie evidence" of a RLUIPA violation, "the government shall bear the burden of persuasion on any element of the claim, except that the plaintiff shall bear the burden of persuasion on whether the [policy] or government practice that is challenged by the claim substantially burdens the plaintiff's exercise of religion."  42 U.S.C.A. § 2000cc-2(b) (West 2003).  "As to

-12-

these elements on which it bears the burden of proof, a government is only entitled to summary judgment if the proffered evidence is such that a rational factfinder could only find for the government." *Smith v. Ozmint*, 578 F.3d 246, 250 (4th Cir. 2009) (citing *Gooden v. Howard County, Md.*, 954 F.2d 960, 971 (4th Cir. 1992)) ("[W]here . . . the movant would have the burden of persuasion at trial, the summary judgment burden is a correspondingly heavy one.").

As under the First Amendment, although prison officials may not question the truth of an inmate's belief, an inmate must demonstrate that the belief is sincerely held in order to establish a protected right under RLUIPA. *See McManus*, 2006 WL 753017 at *5 (citing *Cutter v. Wilkinson*, 544 U.S. 709, 725 n.13 (2005)). Under both the First Amendment and RLUIPA, Brown must show that his right to the free exercise of his religion has been "substantially burdened." *McManus*, 2006 WL 753017 at *5 (quoting *Hernandez v. Comm'r of Internal Revenue*, 490 U.S. 680, 699 (1989); *see also* 42 U.S.C. § 2000cc-1(a)).

Here, Brown alleges that he has been a member of NOI since 1993 and that he has received The Final Call newspaper, an NOI publication, for nearly 15 years at various penological institutions, including Red Onion. Moreover, Brown states that he paid for a subscription to The Final Call with his own funds. Although Brown does not specify any religious services that he attends at Red Onion, he notes that there are no religious services or programs devoted to NOI available to inmates incarcerated at Red Onion. Thus, the court takes note of the fact that there are no acceptable religious services or programs available to Brown of which he is not taking advantage. Finally, the defendants do not dispute that Brown has a sincerely held religious belief in NOI.

For all of these reasons, I find that Brown has sufficiently shown that he possesses a sincerely held religious belief in NOI.

For the following reasons, I also find that Brown's free exercise of religion has been substantially burdened by the defendants' disapproval of the various issues of The Final Call.  RLUIPA does not define "substantial burden."  However, the Fourth Circuit has held that a "substantial burden" on religious exercise occurs when a state or local government, through act or omission, puts substantial pressure on an adherent to modify his behavior and to violate his beliefs.  *See Lovelace v. Lee*, 472 F.3d 174, 187 (4th Cir. 2006).  The Fourth Circuit in *Lovelace* further held that in assessing whether a substantial burden on religious exercise exists for purposes of RLUIPA, courts must not judge the significance of the particular belief or practice in question. *See* 472 F.3d at 187 n.2.  I find that Brown has sufficiently shown that a dispute in material fact exists as to whether the denial of the numerous issues of The Final Call creates a substantial burden on the exercise of his religious beliefs.  Specifically, Brown contends, and it is not disputed by the defendants, that there are no NOI programs or services available to the inmates at Red Onion, that the Chaplain at Red Onion does not counsel NOI inmates in their religion, that no outside religious counselors are allowed into the institution to counsel the NOI inmates and that no NOI publications or videos are made available to the inmates at Red Onion by the institution.[9]  Instead, Brown contends that inmates at Red Onion belonging to NOI must rely on materials that they themselves purchase or which are donated to the institution in order to keep abreast of their religion.  In this vein, Brown argues that

---

[9]Brown does state that one NOI video was shown to the NOI inmates at Red Onion over a 10-month period.  However, he also states that the video cut off prematurely.

The Final Call is an "essential religious text" to members of NOI, comparing it to the Bible for Christians. Specifically, Brown emphasizes that The Final Call includes scriptural readings, Quranic interpretation/instructions, fasting dates, discussions of spiritual progression/growth, discussions of progression of the NOI community, religious bi-annual saviors' days and divine writings by Elijah Muhammad and Louis Farrakhan, as well as The Faithful Companions, all of which are essential to the practice of his religious beliefs. To support this argument, he directs the court to the Third Circuit case of *Sutton v. Rasheed*, 323 F.3d 236 (3rd Cir. 2003).

In *Sutton*, the three plaintiffs, former inmates at the State Correctional Institute at Camp Hill in Pennsylvania, ("Camp Hill"), appealed the district court's grant of summary judgment in the defendants' favor on their claims that the defendants infringed upon their rights protected by the Free Exercise Clause of the First Amendment. *See* 323 F.3d at 240. Specifically, the plaintiffs all belonged to NOI, and all were housed for a period of time in a special housing unit at Camp Hill known as the Special Management Unit, ("SMU"). *See Sutton*, 323 F.3d at 240. The SMU was a structured program that provided for a progression through a series of five phases, beginning at Phase V and progressing to Phase I, at which point the inmate was returned to the general prison population. *See Sutton*, 323 F.3d at 241. Progression from one phase to the next was accomplished by compliance with specified goals and was rewarded by additional privileges. *See Sutton*, 323 F.3d at 241. Inmates in Phases III, IV and V were under restrictive regimes, meaning that they are placed under strict security and control practices, they were allowed short exercise periods and they had limited access to their own personal property. *See Sutton*, 323 F.3d at 241. Inmates at different phases were allowed different amounts

of "religious reading materials." *See Sutton*, 323 F.3d at 241-42. The plaintiffs' expert's testimony, which was uncontradicted, consisted of, among other things, her opinion that The Final Call was an "essential religious text" of NOI. *See Sutton*, 323 F.3d at 254, 256 n. 33. She explained that this meant that "without [these materials], a person could not function well in the Nation of Islam's religious community." *Sutton*, 323 F.3d at 254-55. This expert further explained that such "essential religious text[s]" were "required reading by the faithful." *Sutton*, 323 F.3d at 254.

While there appears to be no case law on point in this circuit related to RLUIPA and the denial of The Final Call newspaper, or any other NOI publication, I find *Sutton* instructive. Given that the undisputed plaintiffs' expert's testimony in that case revealed that The Final Call constitutes an "essential religious text" for NOI followers, combined with Brown's undisputed contention that Red Onion provides no other religious services, programs or counseling for followers of NOI, I find that there is at least a genuine issue of material fact as to whether the disapproval of the various issues of The Final Call placed a substantial burden upon the exercise of Brown's religion. I must next determine whether the defendants have demonstrated that the imposition of the burden is in furtherance of a compelling governmental interest. As stated previously, the defendants bear the burden of persuasion on this issue, and summary judgment is appropriate only if a rational factfinder would necessarily find that the publication disapproval policy withstands scrutiny under RLUIPA. *See Gooden*, 954 F.2d at 971. I find that there is a dispute in a genuine issue of material fact as to whether the defendants can demonstrate the requisite compelling interest. All of the disapprovals of the issues of The Final Call were based on purported violations of either OP 803.2(V)(L)(7), OP 803.2(V)(L)(12) or both. Operating

-16-

Procedure 803.2(V)(L) deals with Specific Criteria for Publication Disapproval.  It states that "[t]he Facility Unit Head, or his designee, should disapprove a publication for receipt and possession by offenders and forward it to the Publication Review Committee for final action if the publication can be reasonably documented to contain" certain types of material.  Relevant to this case, are OP 803.2(V)(L)(7) and OP 803.2(V)(L)(12).

Operating Procedure 803.2(V)(L)(7) relates to "[m]aterial that promotes or advocates violence, disorder, insurrection or terrorist activities against individuals, groups, organizations, the government, or any of its institutions[.]"  Operating Procedure 803.2(V)(L)(12) relates to "[m]aterial whose content could be detrimental to the security, good order, discipline of the facility, or offender rehabilitative efforts or the safety or health of offenders, staff, or others."  Thus, it is clear that the Operating Procedures purportedly violated by the disapproved issues of The Final Call are related to institutional security and safety concerns.

It has been held that prison officials do have a compelling interest in maintaining institutional order and security when faced with questions of inmate religious liberty.  *See Hoevenaar v. Lazaroff*, 422 F.3d 366 (6th Cir. 2005); *Benning v. Georgia*, 391 F.3d 1299, 1313 (11th Cir. 2004); *Murphy v. Mo. Dep't of Corrs.*, 372 F.3d 979, 988 (8th Cir. 2004); *Hamilton v. Schriro*, 74 F.3d 1545, 1555 (8th Cir. 1996) (finding it compelling to maximum security prison to prohibit inmates from having long hair in which contraband and weapons could be concealed); *Harris v. Chapman*, 97 F.3d 499, 503-04 (11th Cir. 1996) (finding the state's compelling interest in security and order within prisons especially applies in close custody facilities which contain

-17-

extremely violent offenders); *Jenkins v. Angelone*, 948 F. Supp. 543, 548 (E.D. Va. 1996) (finding prisons have compelling interest in preserving the health of inmates and maintaining security, among other things) (citing *Ross v. Blackledge*, 477 F.2d 616, 618 (4th Cir. 1973)).  While courts are "not required to blindly accept any policy justification offered by state officials," their analysis should reflect the requisite deference to the expertise and experience of prison officials.  *Hoevenaar*, 422 F.3d at 371.  Due deference must be given "to the experience and expertise of prison and jail administrators in establishing necessary regulations and procedures to maintain good order, security and discipline, consistent with consideration of costs and limited resources."  *Cutter*, 544 U.S. at 723.  Moreover, security concerns deserve "particular sensitivity."  *Smith*, 578 F.3d at 252 (quoting *Cutter*, 544 U.S. at 722).

In order to meet its burden to demonstrate a compelling interest, the defendants first must provide an "explanation for the policy's restrictions that takes into account any institutional need to maintain good order, security, and discipline or to control costs."  *Smith*, 578 F.3d at 252 (quoting *Lovelace*, 472 F.3d at 190).  Here, as in *Smith*, the only justification for the policy at issue is contained in the policy itself.  More specifically, OP 803.2(V)(B) states that "[o]ffenders . . . should be allowed to subscribe to, order, and receive publications . . . *so long as they do not pose a threat to the security, discipline, and good order of the facility and are not detrimental to offender rehabilitation*."  (Emphasis added).  However, as the Fourth Circuit in *Smith* held, "[t]his conclusory, one-sentence explanation does not, by itself, explain why the security interest is compelling."  578 F.3d at 252 (citing *Lovelace*, 472 F.3d at 190).  None of the affidavits submitted by the defendants contain an explanation as to why the publication disapproval policy serves a compelling interest.  All of that being said,

-18-

I find that there is a genuine issue of material fact as to whether the policy at issue serves such a compelling interest.

Even if the defendants were able to demonstrate a compelling interest, however, I find that they also have failed to demonstrate that such a policy constitutes the least restrictive means of furthering it.  In order to demonstrate that the publication disapproval policy is the least restrictive means of furthering the interest of prison security and offender rehabilitation, the defendants must provide a "substantive, relevant explanation" as to why disapproving a publication in its entirety is the least restrictive means of enforcing the compelling interest advanced by them.  *See Smith*, 578 F.3d at 253.  Due deference must again be given to any "substantive, relevant explanation" advanced by the defendants.  *See Smith*, 578 F.3d at 253.  Here, the defendants have proffered no explanation as to why the policy is the least restrictive means of furthering the compelling governmental interest.  I note specifically that the defendants make no argument that the security and inmate rehabilitation concerns cannot be accommodated without disapproving publications in their entirety.

All of this being the case, I find that the defendants have not demonstrated for summary judgment purposes that the VDOC policy of disapproving in their entirety publications which contain portions that allegedly impede security or inmate rehabilitation furthers a compelling governmental interest by the least restrictive means.  I next must determine whether the right that Brown alleges was violated was clearly established at the time of the alleged violation so that a reasonable person in the defendants' positions would have known that such conduct was in violation of such a right.  *See Collinson*, 895 F.2d at 998.  For the following reasons, I find that it

was not.

As previously noted, qualified immunity serves to protect government officials performing discretionary functions from civil liability insofar as their conduct does not violate "clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow*, 457 U.S. at 818. It is not up to the court to determine whether the defendants came to the correct conclusion. Instead, the focus of qualified immunity is on what the official reasonably perceived, and the court is not to look at the actions with the benefit of hindsight. *See Rowland v. Perry*, 41 F.3d 167, 173 (4th Cir. 1994). For a determination of whether the defendants violated clearly established constitutional rights, the inquiry is to be undertaken in the specific context of this case, and not as a general proposition. *See Brosseau v. Haugen*, 543 U.S. 194, 198 (2004) (citing *Saucier*, 533 U.S. at 201) (overruled on alternate grounds)). Stated another way, "[b]ecause the focus is on whether the officer had fair notice that [his] conduct was unlawful, reasonableness is judged against the backdrop of the law at the time of the conduct." *Brosseau*, 543 U.S. at 198. Specifically, the Supreme Court has held that "[i]f the law at that time did not clearly establish that the officer's conduct would violate the Constitution, the officer should not be subject to liability or, indeed, even the burdens of litigation." *Brosseau*, 543 U.S. at 198. That being said, "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Brosseau*, 543 U.S. at 198 (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). Thus the "dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Brosseau*, 543 U.S. at 199 (quoting *Saucier*, 533 U.S. at 202).

However, the Court made clear that the rule does not stand for the proposition that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, *see Mitchell v. Forsyth*, 472 U.S. 511, 535 n.12 (1985), "but it is to say that in light of pre-existing law the unlawfulness must be apparent." *Anderson*, 483 U.S. at 640 (citing *Malley*, 475 U.S. at 344-45; *Mitchell*, 472 U.S. at 528; *Davis v. Scherer*, 468 U.S. 183, 191, 195 (1984)).

Here, there is no doubt that it is clearly established law that the government may not impose a substantial burden on an inmate's religious exercise unless it is in furtherance of a compelling governmental interest and is the least restrictive means of furthering that compelling interest. This is clearly established because this is what is provided by RLUIPA itself. However, this is merely a general proposition and not what must be shown to have been clearly established in the context of the case currently before this court. More specifically, the question now before the court is whether VDOC officials should reasonably have known that disapproving these various issues of The Final Call in their entirety to an inmate belonging to NOI who is incarcerated at a facility that does not provide access to any other NOI materials, services, programs or videos and does not allow for outside religious counselors constituted a violation of RLUIPA. For the following reasons, I find that a reasonable person in the VDOC officials' circumstances here would not have known such.

It is well-settled that in determining whether Brown's rights under RLUIPA were clearly established when the defendants acted, the unlawfulness of the defendants' conduct must have been addressed by the United States Supreme Court, the Fourth Circuit Court of Appeals or the Virginia Supreme Court. *See Wilson v.*

*Layne*, 141 F.3d 111, 114 (4th Cir. 1998).  Importantly, I note that the court can find no such relevant case law dealing with the denial of The Final Call or any other NOI publication under any circumstances.  In fact, the only case law the court has been able to locate relating to The Final Call came from the Third Circuit case of *Sutton*, discussed previously, in which the plaintiffs' expert testified that The Final Call constituted an essential religious text for NOI adherents.  Moreover, there is a written policy followed by the VDOC, and there are certain factors which go into determining whether a given publication should be disapproved.  It appears to the court that the defendants followed the procedure set forth in OP 803.2 for disapproving the various issues of The Final Call.  Additionally, I can locate no case law that has held that such a VDOC policy is improper.  That being the case, I cannot find that the defendants should have known that their actions in accordance with that policy were unlawful.  Therefore, I must find that the defendants' denial of Brown's issues of The Final Call under the above-enumerated circumstances did not constitute a violation of a clearly established constitutional or statutory right of which a reasonable person would have known.  Thus, I am of the opinion that the defendants are entitled to qualified immunity on both Brown's RLUIPA claim and his claim under the First Amendment in their individual capacities for monetary damages.  That being said, I will grant the First Motion in the defendants' favor, but only on Brown's claims for monetary damages.  The First Motion will be denied, however, as it relates to Brown's claim for injunctive relief.

### B. *Second Motion for Summary Judgment*

The defendants' Second Motion deals with claims 2 through 6 of Brown's

Complaint, which are as follows: (1) denial of access to religious services for NOI; (2) denial of the documentation necessary to appeal the PRC's decisions regarding his disapproved publications; (3) discrimination based on race and religion; (4) the PRC does not afford due process; and (5) defendant Fleming is denying him access to his publications because of Brown's race and religious views. In their Second Motion, the defendants claim that Brown has failed to exhaust his administrative remedies with respect to these claims. By affidavit, Fonnie Taylor, the Grievance Coordinator at Red Onion, testified that Brown has not filed any grievances regarding claims 2 through 6 of his Complaint and, therefore, has failed to exhaust his administrative remedies. (Attachment 1 to Docket Item No. 18). In Brown's response to the defendants' Second Motion, he does not advance specific argument as to how he has, in fact, exhausted his administrative remedies with respect to claims 2 through 6. Instead, Brown simply referred the court to copies of grievances filed in connection with this action. After reviewing all of the submitted grievances, I find that Brown has failed to exhaust his administrative remedies with respect to claim 3. That being the case, I find that summary judgment should be granted in the defendants' favor on this claim. However, I find that Brown has exhausted his administrative remedies with regard to claims 2, 4, 5 and 6. That being the case, I find that the defendants' summary judgment motion on these claims should be denied on the ground that Brown has not exhausted his administrative remedies.

### 1. *Claim 2*

With respect to claim 2 of Brown's Complaint, that he is being denied access to NOI religious services, he filed Regular Grievance # 620-29520. (Attachment 15

to Docket Item No. 18).  In that grievance, Brown alleged, among other things, that the chaplain at Red Onion, Chaplain Mitchell, had been negligent in his duties to counsel and offer spiritual assistance to him.  He further alleged that Chaplain Mitchell had not provided him with NOI materials. The Warden responded favorably, finding the grievance founded as policy had been incorrectly applied.  (Attachment 15 to Docket Item No. 18). Also, in Regular Grievance # 620-29506, Brown complained that the chaplain did not show weekly NOI videos, nor did the VDOC provide NOI material or literature.  (Attachment 5 to Docket Item No. 18).  The Warden responded, but did not address this particular complaint.  (Attachment 4 to Docket Item No. 18). However, in his Level III appeal, Brown reiterated this complaint.  (Attachment 4 to Docket Item No. 18).  In his Level III response, Jabe upheld the unfavorable Level I finding and informed Brown that all administrative remedies were exhausted.  (Attachment 4 to Docket Item No. 18).  Thus, it appears to the court that, at least for purposes of this summary judgment motion,  Brown has demonstrated that a dispute in fact exists as to whether he followed VDOC policy for exhausting his administrative remedies on this issue.  That being the case, I find that granting summary judgment in the defendants' favor on this claim would be inappropriate.


### 2.  Claim 3


Next, however, I find that Brown has failed to exhaust his administrative remedies with respect to claim 3 of his Complaint, that he is being denied the necessary documentation to appeal the PRC's decisions to disapprove the various issues of The Final Call.  In his Complaint, Brown states as follows: "Defendants have failed, in many causes, to return proper documents to all denied publications, thereby

denying petitioner the right to redress of government and those binding liberty interests." The court is not certain the documents to which Brown is referring. However, in any event, I note that no grievance has been submitted to the court relating to the defendants' failure to return any documents to him so he could appeal the PRC's unfavorable decision. That being said, I find that Brown has failed to exhaust his administrative remedies on this issue, and I will grant the Second Motion on this claim.

### 3. Claims 4 and 6

As regards claims 4 and 6 of Brown's Complaint, that he is being discriminated against and being denied The Final Call based on race and religion, I find that he has at least demonstrated that a dispute in fact exists as to whether he appropriately exhausted his administrative remedies. Specifically, in Regular Grievance # 620-29516, Brown alleges that the denial of The Final Call constitutes "religious bigotry." (Attachment 5 to Docket Item No. 18). Although the Warden did not address this concern in his Level I response, Brown alleged in his Level III appeal that the officials and staff at Red Onion are racist, leading to the disapproval of Islamic materials like The Final Call. (Attachment 5 to Docket Item No. 18). Jabe failed to specifically address this concern in his Level III response, but he informed Brown that he had exhausted all administrative remedies by setting "No further action appears to be necessary at this time." (Attachment 5 to Docket Item No. 18). Viewing the facts in the light most favorable to Brown, I find that there is a dispute in fact regarding whether he exhausted his administrative remedies with regard to claims 4 and 6. Therefore, I will deny the Second Motion on these claims.

### 4. Claim 5

Lastly, I find that Brown has demonstrated that a dispute in fact exists as to whether he exhausted his administrative remedies with respect to claim 5 of his Complaint, that he was denied due process in the disapproval of The Final Call. Specifically, it is clear from reviewing the documents submitted both by Brown and by the defendants that Brown repeatedly raised the due process issue in accordance with VDOC policy.  I note that while there were no grievances submitted by Brown that dealt solely with this issue, he repeatedly raised the due process issue in his grievances and in his appeals to all appropriate levels.  The court further notes, however, that this issue never was specifically addressed by VDOC at any level.  For instance, in Regular Grievance # 620-29793, Brown specifically alleged that for Red Onion and VDOC officials to deny issues of The Final Call merely by citing a policy number that was allegedly violated without explaining how each of the disapproved issues violated that policy constituted a violation of his due process rights. (Attachment 6 to Docket Item No. 18).  In the Warden's Level I response, it was specifically noted in the "Grievance Summary" section that Brown had alleged that his due process rights were violated.  (Attachment 6 to Docket Item No. 18).  Brown reiterated this position in his Level III appeal.  (Attachment 6 to Docket Item No. 18). However, Jabe did not specifically address Brown's due process claim in his Level III response.  (Attachment 6 to Docket Item No. 18).  Nonetheless, Jabe informed Brown that he had exhausted all available remedies.  (Attachment 6 to Docket Item No. 18). Likewise, in Regular Grievance # 620-29797, Brown alleged that the PRC and L. Fleming were violating his due process rights by citing a policy that was allegedly being violated by The Final Call, but not supplying supporting evidence as to how such a violation was occurring.  (Attachment 7 to Docket Item No. 18).  Again, in the

-26-

Level I response, the Warden summarized Brown's grievance to include a due process complaint.  (Attachment 7 to Docket Item No. 18).  Brown additionally raised the issue in his Level III appeal.  (Attachment 7 to Docket Item No. 18).  However, Jabe, in his Level III response did not specifically address Brown's due process complaint.  (Attachment 7 to Docket Item No. 18).  All of Brown's administrative remedies were exhausted at that time in accordance with VDOC policy.  Also, in Regular Grievance # 620-29798, Brown alleged that his due process rights were violated in the same manner mentioned above.  (Attachment 8 to Docket Item No. 18).  Again, the "Grievance Summary" contained in the Level I response restated his due process complaint.  (Attachment 8 to Docket Item No. 18).  In his Level III appeal, Brown reiterated this claim.  (Attachment 8 to Docket Item No. 18).  However, Jabe's Level III response did not specifically address this complaint.  (Attachment 7 to Docket Item No. 18).  Nonetheless, Jabe informed Brown that he had exhausted all administrative remedies related to his grievance.  (Attachment 7 to Docket Item No. 18).  All of this being said, it is clear that a dispute in fact exists regarding whether Brown has exhausted his administrative remedies with respect to claim 5 of his Complaint, that the procedure followed by the PRC does not allow due process.  Therefore, I will deny the Second Motion on this claim.

## C.  Motion to Seal

The defendants also have filed a Motion to Seal with the court.  The document sought to be sealed is a newly added section of The Final Call contained in each of the issues that has been denied to Brown.  This section is entitled "The Muslim Program" and contains two subsections: "What The Muslims Want" and "What The Muslims Believe."  After conducting an in camera, ex parte review of this document, I will

grant the Motion to Seal, as I find that it contains portions that could be found to violate OP 803.2(V)(L)(7) and OP 803.2(V)(L)(12).  However, the parties are placed on notice that, if the defendants wish to enter this document into evidence at trial, the plaintiff will be provided access to the document at that time.

For all of the above-stated reasons, the defendants' First Motion will be granted in part and denied in part.  Specifically, the First Motion will be granted as to all of Brown's claims for monetary damages, but it will be denied as to his claims for injunctive relief.  The defendants' Second Motion also will be granted in part and denied in part.  Particularly, the Second Motion will be granted as to claim 3 of Brown's Complaint, but will be denied as to claims 2, 4, 5 and 6.  The defendants' Motion to Seal will be granted as to this proceeding only.

An appropriate order will be entered.

DATED:       This 26th day of February 2010.

/s/ *Pamela Meade Sargent*
UNITED STATES MAGISTRATE JUDGE